E-FILED
Friday, 13 November, 2026 01:49:48 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| JGL, FRANCINE GOMEZ-LEE, and MARK A. LEE,<br><br>Plaintiffs,<br><br>v.<br><br>BRETT BOTTORFF, THE CHADDOCK SCHOOL, SUSAN HOLTSCLAW, GREGORY KELLETT, MADELINE STEWART, and FT. MADISON COMMUNITY SCHOOL DISTRICT,<br><br>Defendants. | ) | Case No. 4:25-cv-04152-SLD-RLH |

ORDER

Before the Court is Defendants Brett Bottorff, The Chaddock School, Susan Holtsclaw, and Gregory Kellett's (together: the "Chaddock Defendants") motion for judgment on the pleadings, ECF No. 34. For the reasons that follow, the motion is GRANTED.

## BACKGROUND

### I. Factual Background[1]

JGL is a minor resident of Ft. Madison, Iowa, with an autism spectrum disorder and learning disabilities. He is the son of Francine Gomez-Lee and Mark Lee. At all relevant times, JGL had an Individualized Education Program ("IEP") under the Individuals with Disabilities Education Act ("IDEA"). Through his eighth grade year, JGL was a student in the Ft. Madison Community School District ("FMCSD"). However, in August 2023, JGL's IEP was modified so that he would attend high school at The Chaddock School ("Chaddock"), a private school in

[1] Unless otherwise noted, the facts outlined in this section are as alleged in the complaint, ECF No. 1. A more complete account of the relevant facts can be found in the Court's May 20, 2026 Order, ECF No. 26.

Illinois. Shortly after starting at Chaddock, Stewart, a paraprofessional there, repeatedly engaged in non-consensual sexual contact with JGL and at least one other male student, despite JGL's resistance. On multiple occasions, JGL and his parents reported Stewart's misconduct to Chaddock staff, including Bottorff, Chaddock's principal, and Holtsclaw, the special education teacher at Chaddock.

During his first few months at Chaddock, JGL was disciplined almost daily for "acting out" and "not listening." Compl. 6, ECF No. 1 (quotation marks omitted). This discipline included removing JGL from instruction and confining him alone in a locked, windowless room. Bottorff and Holtsclaw were both aware of these disciplinary actions and even met with JGL, Lee, and Gomez-Lee to discuss JGL's behavior. During that meeting, JGL explained that his "acting out" was in relation to his objection to Stewart's inappropriate conduct, but Bottorf told Lee and Gomez-Lee that "there's nothing going on." *Id.* (quotation marks omitted).

In early October 2023, Stewart petitioned for a protective order against JGL with the assistance of Kellett, another paraprofessional at Chaddock. To do so, Stewart falsely accused JGL of threats and sexually suggestive remarks in order to deflect attention from her own misconduct. JGL was suspended from Chaddock after a protective order was issued on October 26, 2023. FMCSD did not follow up on JGL's placement at Chaddock until it met with Bottorff and another Chaddock administrator on November 7, 2023. The protective order was dismissed shortly thereafter, when law enforcement received evidence of Stewart's misconduct, which included explicit communication, sexual touching, and oral sex with another student. On or about November 29, 2023, Stewart was charged with multiple counts of child sexual abuse, to which she has since pled guilty. In December 2023, JGL was withdrawn from Chaddock.

## II. Procedural History

On August 22, 2025, Plaintiffs filed a complaint containing twelve counts against six defendants. *See generally* Compl. As relevant to this motion, Plaintiffs brought Count II against FMCSD and Chaddock for disability discrimination and retaliation in violation of the Rehabilitation Act. *Id.* at 11. They brought Count V against Stewart, Bottorff, Holtsclaw, and Kellett for violating the Fourteenth Amendment right to bodily integrity by "subjecting him to unwelcome sexual touching and physical assault" and for "act[ing] with deliberate indifference by failing to protect him, by facilitating and perpetuating dangerous conditions, and by isolating and secluding him in a manner that increased his vulnerability to harm." *Id.* at 13. The Chaddock Defendants filed an answer, *see* Ans. Chaddock Defs., ECF No. 9, but Stewart and FMCSD brought motions to dismiss, *see* Mot. Dismiss Stewart, ECF No. 18, Mot. Dismiss FMCSD, ECF No. 22.

The Court partially granted both motions, dismissing Count II as against FMCSD and Count V as against Stewart. *See* May 20, 2026 Order 32–33, ECF No. 26. It dismissed Count II because "[t]he complaint nowhere alleges that the unwelcome sexual contact, the retaliatory treatment, the protective order, the removal from Chaddock, or any other of the alleged illegal conduct occurred because of JGL's disability." *Id.* at 24. The Court dismissed Count V because Stewart was not a state actor. *Id.* at 6–12. It reasoned that "JGL's IDEA placement did not make Chaddock a state actor with respect to its education of JGL, so Stewart's role in that arrangement cannot make her a state actor either." *Id.* at 11. Further, even if Chaddock was a state actor with respect to JGL's IDEA placement, there was no indication that state officials had any role in the actions supporting Plaintiffs' constitutional claim: Stewart's unwelcome sexual touching. *Id.* at 11–12.

After the Court's order on the motions to dismiss, the remaining answers were filed and Magistrate Judge Hanna issued a scheduling order, *see* Aug. 3, 2026 Text Order, ECF No. 33. The Chaddock Defendants then filed the present motion for judgment on the pleadings. They contend that they are entitled to judgment as a matter of law on Count II, brought against Chaddock, and Count V, brought against Bottorff, Holtsclaw, and Kellett, for the reasons outlined in the Court's order on Stewart and FMCSD's motions to dismiss. Mot. J. Pleadings 2. Plaintiffs resist the motion, arguing that the Court's prior order does not compel dismissal of Counts II and V against the Chaddock Defendants since such claims are distinguishable from those brought against FMCSD and Stewart. *See generally* Resp., ECF No. 42. Plaintiffs also request leave to amend their complaint if the Court grants the Chaddock Defendants' motion. *Id.* at 9–10.

## DISCUSSION

### I. Legal Standard

A party may move for judgment on the pleadings after the pleadings—the complaint, answers, and any attached exhibits—are closed. Fed. R. Civ. P. 12(c). The standard for dismissal is the same as that for motions brought under Rule 12(b)(6). *Federated Mut. Ins. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). Thus, to survive the motion, "the complaint must state a claim that is plausible on its face." *St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016) (quotation marks omitted). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]he court views all facts and inferences in the light most favorable to the non-moving party," *Federated Mut. Ins.*, 983 F.3d at 313, but "need not ignore facts set forth in the

complaint that undermine the plaintiff's claim or give weight to unsupported conclusions of law," *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

## II. Analysis

### a. Count II: Rehabilitation Act

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). When dismissing Plaintiffs' Rehabilitation Act claim against FMCSD, the Court held that they had not plausibly alleged that any of the harms JGL suffered were caused by his disability. May 20, 2026 Order 23–24.

Chaddock contends that it is entitled to judgment as a matter of law because "[t]he allegations supporting Count II against Chaddock are the same allegations the Court found insufficient to establish that any alleged mistreatment occurred because of JGL's disability." Mot. J. Pleadings 3. Plaintiffs respond that its claims against Chaddock are distinguishable because "Chaddock is differently situated" and had greater "notice of and control over the pertinent on-site conduct." Resp. 6. They argue that "[a]t minimum, Plaintiffs plausibly allege that Chaddock denied JGL meaningful access to educational services and failed to provide disability-appropriate modifications and safeguards." *Id.* at 7.

To begin with, Plaintiffs' attempts to distinguish Chaddock from FMCSD are unavailing. Regardless of which defendant the claim is brought against, the Rehabilitation Act only provides recovery for discrimination suffered "solely by reason of [the plaintiff's] disability." 29 U.S.C. § 794(a). Chaddock's greater notice of and control over the relevant actions does not move the needle on the Court's conclusion that none of the actions were caused by JGL's disability.

Moreover, Plaintiffs cannot evade the Rehabilitation Act's causation requirement by focusing on their failure-to-accommodate claim. It is, of course, true that a plaintiff can generally bring a failure-to-accommodate claim when an approved accommodation is not respected and the plaintiff consequently is effectively denied the benefits of a public education. *See, e.g.*, *CTL by Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 529–30 (7th Cir. 2014). However, a failure to provide accommodations is actionable "only when it allows the disabled to obtain benefits that they ordinarily could not have by reason of their disabilities, and not because of some quality that they share with the public generally."[2] *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 754 (7th Cir. 2006). This causation element is satisfied only when the plaintiff shows that "he would have been able to access the services or benefits desired" if he were not disabled." *Id.*[3] In this case, the complaint clearly alleges that JGL was removed from the classroom, isolated, and deprived of meaningful access to education not because of his disability, but in retaliation for his complaints of Stewart's misconduct. Compl. 5–8. There is every reason to believe this would have happened regardless of JGL's disability status. As a result, Plaintiffs do not plausibly allege that JGL would have received greater access to educational services if he were not disabled.

---

[2] The Seventh Circuit has frequently articulated the elements of a failure-to-accommodate claim without reference to causation. *See, e.g.*, *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019). But it has also clarified that, for such a claim, causation is "a factor which is implied if not stated." *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1032 (7th Cir. 1999); *see also Youngman v. Peoria County*, 947 F.3d 1037, 1042 (7th Cir. 2020).

[3] *Wisconsin Community Services* addressed the causation requirement of the Americans with Disabilities Act ("ADA"). 465 F.3d at 752. While the elements of an ADA and Rehabilitation Act claim are generally the same, they differ slightly in their causation requirement. As the Court explained in its prior order, plaintiffs in disability discrimination cases generally must establish that they would not have suffered the adverse action "but for" their disabilities. May 20, 2026 Order 24; *see, e.g.*, *Culp v. Caudill*, 140 F.4th 938, 943 (7th Cir. 2025). While this is true for actions brought under the ADA, *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010), the Rehabilitation Act "imposes a heightened, 'sole' causation requirement for a claim of disability discrimination." *Shirk v. Trs. of Ind. Univ.*, 167 F.4th 460, 467 (7th Cir. 2026). Since Plaintiffs bring Count II under the Rehabilitation Act, they must clear this higher bar: JGL's disability "must be the *sole* reason for the alleged discriminatory action," *Royan v. Chi. State Univ.*, 145 F.4th 681, 689 (7th Cir. 2025) (quotation marks omitted).

In short, as the Court previously concluded, "[t]he complaint nowhere alleges that the unwelcome sexual contact, the retaliatory treatment, the protective order, the removal from Chaddock, or any other of the alleged illegal conduct occurred because of JGL's disability." May 20, 2026 Order 24. This is as true with respect to Chaddock as it is for FMCSD.

**b. Count V: Substantive Due Process**

The due-process clause of the Fourteenth Amendment protects individuals from violations of certain substantive rights by state actors. *Doe 1 v. Sloan*, 172 F.4th 955, 957–58 (7th Cir. 2026). While the state action requirement generally prohibits actions only by government agencies or officials, it includes in its ambit situations wherein there is a "sufficiently close nexus between the State and the challenged action of the [private party] so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974). Several categories of circumstances qualify as a "close nexus," including when the challenged action "results from the State's exercise of 'coercive power,'" *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)), "when a private actor operates as a 'willful participant in joint activity with the State or its agents,'" *id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982)); "when [a private entity] has been delegated a public function by the State," *id.* (citing *West v. Atkins*, 487 U.S. 42, 56 (1988)), and "when [a private entity] is 'entwined with governmental policies,' or when government is 'entwined in [its] management or control,'" *id.* (quoting *Evans v. Newton*, 382 U.S. 296, 299, 301 (1966)) (second alteration in original). *See Lugar*, 457 U.S. at 939 (describing "a number of different factors or tests" for purposes of identifying state action that the Court has articulated in different contexts).

The Court granted Stewart's motion to dismiss Count V because she was not a state actor. May 20, 2026 Order 6–12. After examining the relevant caselaw involving private schools that engage in partnerships or contracts with public school districts, the Court held that "JGL's IDEA placement did not make Chaddock a state actor with respect to its education of JGL, so Stewart's role in that arrangement cannot make her a state actor either." *Id.* at 11. The Court's reasoning in granting Stewart's motion to dismiss applies with equal force to the Chaddock Defendants and compels the dismissal of Count V.

Plaintiffs contend that judgment in favor of the Chaddock Defendants is improper because "[t]he state-action inquiry is action specific." Resp. 7. They highlight that Stewart's relevant actions—sexual touching—differ from the relevant actions of the Chaddock Defendants, which include "failure to protect, alleged participation in or facilitation of unsafe conditions, alleged seclusion, and restrictions on educational access." *Id.* at 8–9.

While Plaintiffs identify several actions they claim are relevant—including seclusion and restriction on educational access—it is helpful to preliminarily note that the substantive due process right at issue is JGL's right to bodily integrity. Compl. 13. Plaintiffs do not argue that the Chaddock Defendants directly participated in Stewart's sexual touching; they claim instead that they can be held liable under the state-created danger doctrine. *Id.* Under the state-created danger doctrine, government actors can be held liable for failing to protect an individual for harms imposed by private parties. *Est. of Her v. Hoeppner*, 939 F.3d 872, 876 (7th Cir. 2019). Accordingly, to state a substantive due process claim against the Chaddock Defendants, the complaint must plausibly suggest that the Chaddock Defendants were state actors when they failed to protect JGL from sexual touching by Stewart. The seclusion and restriction on educational access are only relevant insofar as they contributed to the alleged failure to protect.

As the Court has already held, JGL's IDEA placement at Chaddock does not itself convert Chaddock or its employees into state actors with respect to JGL's education. May 20, 2026 Order 11. It also held that use of a state judicial process to obtain a protective order does not cast a party as a state actor. *Id.* at 12 (citing *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). Thus, the complaint must allege further facts that suggest a "close nexus" between the State and the Chaddock Defendants' failure to protect JGL "so that the action of [the Chaddock Defendants] may be fairly treated as that of the State itself." *Jackson*, 419 U.S. at 351. The complaint does not do so. The only additional fact tying the Chaddock Defendants to the State is that Bottorff met with FMCSD administrators on November 7, 2023, to discuss JGL's placement. Compl. 8; Resp. 8. In fact, the complaint affirmatively alleges that FMCSD was *not* in communication with the Chaddock Defendants about JGL's placement before that time. Compl. 8. And since this meeting took place after JGL was removed from Chaddock following the issuance of the protective order, *id.*, it does not suggest that there was a "close nexus" between FMCSD and the Chaddock Defendants with respect to the failure to protect JGL from sexual touching by Stewart, which occurred before JGL was removed from the school.

Although the complaint need not establish the precise contours of the relationship between FMCSD and the Chaddock Defendants, *see* Resp. 8 (arguing that it is improper to dismiss the claim "before the pleadings disclose the terms of the placement agreement, the allocation of authority over discipline and removals, the reporting framework, or the precise relationship between Chaddock and FMCSD concerning restrictions on JGL's educational access"), it must plausibly allege that there was a "close nexus" between the Chaddock Defendants and FMCSD, *Jackson*, 419 U.S. at 351. For the reasons discussed in the Court's

prior order, the allegations surrounding JGL's IDEA placement do not do so, and Plaintiffs identify no additional facts that would support such a finding.

### III. Leave to Amend

Plaintiffs request leave to amend their complaint. Resp. 9–10. Courts should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Granting leave to amend is appropriate in this case because this would be Plaintiffs' first amended complaint, the case is still in the early stages of discovery, and this is the first motion brought by the Chaddock Defendants, *cf. Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily . . . a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."). However, the leave is limited to addressing the deficiencies in Counts II and V against the Chaddock Defendants. Since Plaintiffs did not make use of their opportunity to file an amended complaint after the Court dismissed Counts II and V against FMCSD and Stewart, respectively, *see* May 20, 2026 Order 33, those claims cannot now be revived.

## CONCLUSION

Accordingly, Defendants Brett Bottorff, The Chaddock School, Susan Holtsclaw, and Gregory Kellett's motion for judgment on the pleadings, ECF No. 34, is GRANTED. Plaintiffs have until December 4, 2026, to file an amended complaint, if they can in good faith address the deficiencies identified in this order.

Entered this 13th day of November, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE